IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| OREXO AB and OREXO US, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 14-829 (SLR) (SRF) |
| | ) | |
| ACTAVIS ELIZABETH LLC, | ) | REDACTED - PUBLIC VERSION |
| | ) | |
| Defendant. | ) | |

**OREXO'S OBJECTIONS TO OCTOBER 5, 2015 MEMORANDUM ORDER**
**<u>REGARDING MOTION TO COMPEL PRODUCTION OF SAMPLES</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Derek J. Fahnestock (#4705)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
dfahnestock@mnat.com
jtigan@mnat.com
*Attorneys for Plaintiffs*
*Orexo AB and Orexo US, Inc.*

OF COUNSEL:

Errol B. Taylor
Fredrick M. Zullow
Anna Brook
Nangah Tabah
Jordan P. Markham
MILBANK, TWEED, HADLEY & MCCLOY LLP
28 Liberty Street
New York, NY 10005
(212) 530-5000

Originally Filed: October 19, 2015
Redacted Version Filed: October 27, 2015

# TABLE OF CONTENTS

Page


TABLE OF AUTHORITIES ... ii

INTRODUCTION ... 1

I. FACTUAL AND PROCEDURAL BACKGROUND ... 1

II. STANDARD OF REVIEW ... 2

III. PERMITTING ACTAVIS TO AVOID PRODUCING RELEVANT SAMPLES IS CLEAR ERROR ... 2

A. The Magistrate Judge Erred By Ignoring The Samples' Relevance ... 3

B. Actavis Should Be Ordered To Produce Samples In Its Possession Or Explain Why It No Longer Has Samples ... 6

IV. RELIANCE ON ACTAVIS'S UNSUPPORTED REPRESENTATION THAT IT NO LONGER HAS THE REQUESTED MATERIALS WAS CLEAR ERROR ... 7

V. ACTAVIS SHOULD NOT BE PERMITTED TO RELY ON THE OCTOBER 5 ORDER TO AVOID DISCOVERY ... 9

CONCLUSION ... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Haines v. Liggett Grp., Inc.*,
975 F.2d 81 (3d Cir. 1992)....2

*Leader Techs., Inc. v. Facebook, Inc.*,
719 F. Supp. 2d 373 (D. Del. 2010)....2

*Liquid Dynamics Corp. v. Vaughan Co.*,
449 F.3d 1209 (Fed. Cir. 2006)....5

*Michalic v. Cleveland Tankers, Inc.*,
364 U.S. 325 (1960)....5

*Novartis Pharms. Corp. v. Par Pharma and Watson Labs., Inc.*,
48 F. Supp. 3d 733, 743–44 (D. Del. 2014)....3, 5

*Otsuka Pharm. Co., Ltd. v. Apotex Corp.*,
No. 14-8074, 2015 WL 4756636 (D.N.J. Aug. 11, 2015)....3

*Wagner v. Sea Esta Motel*,
No. 13-81-RGA, 2014 WL 4247731 (D. Del. Aug. 26, 2014)....8

**Rules and Statutes**

28 U.S.C. § 636....2

D. Del. LR 7.1.5(b)....2

D. Del. LR 72.1....2

Fed. R. Civ. P. 26(b)(1)....3, 6

Fed. R. Civ. P. 34....6

Fed. R. Civ. P. 72....1, 2

## INTRODUCTION

In November 2014, Orexo requested raw material and intermediate samples from Actavis to determine if Actavis's proposedmn generic version of Orexo's Zubsolv® product infringes the patents in suit. Actavis had raw materials and access to intermediates at the time as highlighted by a [redacted] manufacturing run. After Actavis refused, Orexo sought the Court's assistance to compel production. (D.I. 116). On October 5, 2015, Magistrate Judge Fallon denied the majority of Orexo's requests, precluding Orexo from obtaining basic discovery of samples in Actavis's possession. (D.I. 126, "the Order"). Magistrate Judge Fallon's Order, furthermore, did not address Orexo's request for an explanation and information regarding how much sample Actavis had and when (to assess appropriate relief).

Pursuant to Federal Rule of Civil Procedure 72(a), Orexo respectfully requests that the Court vacate the portions of the October 5 Order addressed below, grant Orexo's request for samples, and order Actavis to provide information regarding how much sample it had over time and why Actavis apparently did not preserve samples in its possession.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This Hatch-Waxman suit relates to U.S. Patent Nos. 8,454,996 ("the '996 patent") and 8,940,330 ("the '330 patent"), which claim pharmaceutical formulations and methods of using such formulations, embodied in Orexo's brand name Zubsolv® product. In November 2014, Orexo requested that Actavis produce samples of (1) Actavis's finished ANDA product, (2) the raw materials used in Actavis's ANDA product, and (3) intermediates from various stages of manufacture of Actavis's ANDA product to assist with Orexo's infringement analysis. (D.I. 116 at 1–2). Despite unquestionably having these materials, Actavis refused to produce [redacted] raw materials used to make its proposed generic product, including the buprenorphine

active ingredient and [redacted], and failed to collect intermediate samples for production when manufacturing their product.[1]

Thereafter, Orexo requested that Magistrate Judge Fallon order Actavis to produce samples. Orexo also requested that the Court require Actavis to explain why samples that were in its possession after November 2014 were not preserved for production. (D.I. 116 at 2–4).

Magistrate Judge Fallon heard oral argument on Orexo's requests on October 1, 2015. (Ex. 1, 10/1/15 Transcript).[2] On October 5, Judge Fallon issued a Memorandum Order denying Orexo's request for production of [redacted] raw materials (including buprenorphine and [redacted]) and all intermediate samples. The Order did not address Orexo's request that Actavis provide an explanation concenring why any materials in its possession after November 2014 are not available now. (D.I. 126).

## II. Standard of Review

Orexo submits these objections pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and D. Del. LR 7.1.5(b) and 72.1. The Court may reconsider and set aside any part of a magistrate judge's order that is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). A finding is clearly erroneous if it "(1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data." *Leader Techs., Inc. v. Facebook, Inc.*, 719 F. Supp. 2d 373, 375 (D. Del. 2010) (citing *Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 92 (3d Cir. 1992)).

## III. Permitting Actavis To Avoid Producing Relevant Samples Is Clear Error

The requested samples are relevant. Actavis had a duty to preserve and produce them.

---

1 Actavis also failed to alert Orexo that samples would be destroyed or not collected, preventing Orexo from seeking expedited relief.

2 Ex. 1–7 refer to exhibits to the Declaration of Anna Brook, filed herewith.

### A. The Magistrate Judge Erred By Ignoring The Samples' Relevance

The proper scope of discovery encompasses any matter relevant to a claim or defense in the litigation. Fed. R. Civ. P. 26(b)(1). Orexo presented a factual explanation why the samples are relevant. (D.I. 116 at 1–2, *See also* pp. 4–5 below).[3] Magistrate Judge Fallon's Order does not address the explanation, and simply states that Orexo has "not presented the court with any case authorities supporting their argument that defendant is obligated to provide samples of raw materials in addition to samples of the finished ANDA product to establish infringement." (D.I. 126, ¶ 6). First, as Orexo explained during the October 1 hearing, raw material sample discovery relating to an ANDA product in Hatch-Waxman cases is standard, basic discovery that normally does not result in disputes that need Court resolution. (Ex. 1, 10/1/15 Transcript, 13:20–14:7). For example, in *Otsuka Pharm. Co., Ltd. v. Apotex Corp.*, No. 14-8074, 2015 WL 4756636 *5 (D.N.J. Aug. 11, 2015), "Apotex [defendant] then provided Otsuka [plaintiff] with…raw materials and product samples associated with its ANDA product" even before litigation was filed. Second, the October 5 Order is wrong as a matter of law because it relied on the existence or absence of case law to decide the issue despite the Federal Rules that permit discovery of any matter relevant to a claim or defense.[4] And, the Order is clearly erroneous in light of Orexo's explanation that as a factual matter, the samples are probative of infringement of the patents in this case. For example, in *Novartis Pharms. Corp. v. Par Pharma and Watson Labs., Inc.*, 48 F. Supp. 3d 733, 743–44 (D. Del. 2014), tests were "conducted on the samples of

---

[3] Orexo also offered to provide Magistrate Judge Fallon with an expert declaration explaining the samples' relevance. (Ex. 1, 10/1/15 Transcript 26:8–17). However, Judge Fallon ruled without requesting the declaration. Orexo submits the declaration of Dr. Shen Yung Luk herewith which supports Orexo's previously-provided explanation why the samples are relevant (should the Court wish to consider it in deciding these objections).

[4] Actavis did not present any case law that raw material or intermediate samples are not relevant.

bulk 900A and 905A adhesive" (the raw material) used in the final product, a transdermal patch, showing that tests on raw material samples are probative of whether the final product infringes. Orexo discovered these cases after the October 1 hearing and October 5 Order in which the court focused on case authorities addressing production of raw material samples. (Ex. 1, 10/1/15 Transcript 13:8–19; D.I. 126, ¶ 6).

The claims at issue require specific relationships between materials in the claimed formulations, including buprenorphine and [redacted] which Actavis refused to produce. The claims in the '996 patent require a tablet with buprenorphine presented at (claim 1) or adhered to (claim 2) the surfaces of carrier particles. The '330 patent claims require a tablet with buprenorphine presented upon the surfaces of carrier particles, where the buprenorphine is in contact with, but not in the same particle as citric acid. (See D.I. 116 at 1). On October 6, the Court construed the terms "presented upon" and "presented at" to mean "positioned at the outside part or layer of the carrier particles by interactive forces strong enough to keep the adherent particles at the carrier surface." (D.I. 127 at 2).

**The raw material samples are relevant**. Raw material samples assist with the infringement analysis in at least two ways. First, each raw material sample can be characterized and that material's reference signal can be used to determine the presence of the material in the finished product, and its relationship to other materials. These reference signals assist in determining whether particles of buprenorphine are "positioned at the outside part or layer of the carrier particles" as required by the Court's claim construction. (D.I. 116 at 2; D.I. 127 at 2; Luk Decl. ¶¶ 9–11). They also assist in determining whether buprenorphine and citric acid particles are in contact with each other, as required by the '330 patent and the Court's construction. (D.I. 127 at 4).

Second, the raw material samples can be used to repeat portions of Actavis's manufacturing process to perform blending tests that address whether certain particles "adhere" to others as addressed in the Court's claim construction. The '996 patent discloses that mixing materials in certain ways for a sufficient amount of time can lead to adherence between particles of those materials. (D.I. 116 at 2, citing '996 pat. col. 7, ll. 13–20). The blending tests also address whether Actavis's blend times result in interactive forces that are strong enough to keep the adherent particles at the carrier surface both at the intermediate stage and in the final formulation (pursuant to the Court's claim construction). (Luk Decl. ¶¶ 12–13).

**The intermediate samples are relevant**. Intermediate samples Orexo requested are also probative of infringement. As with the results of the blending experiments above, intermediates can be tested to show that particles in Actavis's product adhere to other particles. (D.I. 116 at 2). They can also be studied to address whether any interactive forces are strong enough to keep the adherent particles at the carrier surface in the intermediate blend and in the final tablet formulation. (Luk Decl. ¶¶ 15–17).

"[A] patentee may prove…infringement by either direct or circumstantial evidence." *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1219 (Fed. Cir. 2006); *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330 (1960) ("Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence."); *Novartis*, 48 F. Supp. 3d at 741 (cited above) (patentee may prove infringement by any method of analysis that is probative of infringement, and circumstantial evidence may be sufficient). Raw material samples in combination with samples of Actavis's finished product present direct evidence of infringement. Blending tests and tests of intermediates at the very least provide

circumstantial evidence of infringement. Both are sufficient to establish relevance and require production of the samples. (Ex. 1, 10/1/15 Transcript 26:8–17; *see also* Luk Decl. ¶¶ 5–17).

The failure to recognize that the samples are relevant and should be produced under these circumstances is both an error of law and clearly erroneous.

### B. Actavis Should Be Ordered To Produce Samples In Its Possession Or Explain Why It No Longer Has Samples

Actavis's documents show that it had all requested materials when Orexo's November 2014 discovery requests were pending. [redacted][5] Despite having all of the requested raw materials, Actavis only agreed to produce two of its own choosing ([redacted]). All raw materials (including buprenorphine and [redacted], both expressly named in the claims and addressed by the Court in its claim construction) are relevant, and Actavis should be ordered to produce any samples in its possession pursuant to Fed. R. Civ. P. 26(b)(1) and 34. Orexo therefore requests that the Court vacate paragraph 6 of Judge Fallon's October 5 Order and require that Actavis produce all samples in its possession, custody or control, or explain why it did not preserve the samples (which it unquestionably had in [redacted]).

---

[5] Orexo's Zubsolv® product is available in five dosage strengths identified by the ratio of the two active ingredients, buprenorphine and naloxone (1.4mg/0.36mg, 2.9mg/0.71mg, 5.7mg/1.4mg, 8.6mg/2.1mg and 11.4mg/2.9mg). (D.I. 116 at Ex. 9, FDA website). Actavis's ANDA eeks to market two strengths (1.4mg/0.36mg and 5.7mg/1.4mg). [redacted]

It is not sufficient, as the Order suggests, that Actavis's ANDA identifies its raw material suppliers. (D.I. 126, ¶ 5). Obtaining samples from Actavis guarantees that they are representative of the materials used in Actavis's ANDA product. If Orexo sources the materials itself, Actavis may argue that the samples are not representative of the raw materials it uses. Therefore, if Orexo cannot obtain samples from Actavis, then Actavis must at least be precluded from challenging whether the samples are representative. (D.I. 116 at 2).

Nor does identifying suppliers in Actavis's ANDA guarantee that Orexo can obtain the raw materials. Orexo spent months attempting to purchase the buprenorphine active ingredient with the same specifications used by Actavis from Actavis's supplier [redacted]. After agreeing on an amount and price for material that meets Actavis's specification, on October 9, 2015 [redacted] informed Orexo's experts that "Upon internal discussion – the recommendation is to acquire the needed material from Actavis." After further discussion, on October 15 [redacted] backtracked on the proposed sale stating, "Apologies for the lack of response. My team did reach out to me about this. We are unable to help you at this time." (Ex. 2). One day after [redacted] reneged on its agreement to sell Orexo samples that meet Actavis's specification, Orexo served subpoenas. (D.I. 132–134). This back-and-forth shows that Actavis's representation that Orexo can simply obtain the materials meeting Actavis's specifications from Actavis's suppliers (which the Court accepted) is clearly wrong.

## IV. Reliance on Actavis's Unsupported Representation That It No Longer Has The Requested Materials Was Clear Error

Evidence presented to Magistrate Judge Fallon demonstrated that Actavis had all materials used in its ANDA product and intermediates in [redacted]. (D.I. 116 at 3). Indeed, Actavis presented no evidence to the contrary other than attorney argument (relied on in ¶¶ 2 and 4 of the October 5 Order). Reliance on these unsubstantiated statements was clear error.

**Buprenorphine**. Actavis's documents show it used over 2,500 grams (Orexo only seeks 50 grams, and would accept less if only a lesser amount was available) of buprenorphine to make its [redacted] products. (D.I. 116 at 3–4). Yet Actavis's attorney represented that Actavis does not have any buprenorphine other than what it must retain to meet FDA requirements. Magistrate Judge Fallon credited Actavis's attorney's statement without further investigation even though the documents show that it was clearly not correct as of [redacted] while Orexo's requests were pending. (D.I. 126, ¶ 4). At the very least, Actavis should explain the incongruity between its documents and its arguments to Judge Fallon.

**Intermediates**. Actavis's documents show that it used the same process and materials to manufacture the [redacted] batches as the dosage strengths disclosed in the ANDA in this case. (D.I. 116 at 3–4). Actavis therefore had access to the requested intermediate samples, knew that Orexo requested the samples, and had an obligation to preserve them (or at minimum inform Orexo that it was not going to preserve samples so that Orexo could request emergency consideration by the Court). [redacted] Again, Actavis's documents contradict its representation to the Court and Actavis should, at a minimum, be ordered to explain the inconsistency.

Parties have an obligation to preserve samples that are the subject of pending document requests. *Wagner v. Sea Esta Motel*, No. 13-81-RGA, 2014 WL 4247731 (D. Del. Aug. 26,

2014). In light of evidence that Actavis did not honor that obligation, Orexo requests that the Court vacate paragraphs 2 and 4 of the October 5 Order and order that Actavis explain why it did not preserve samples of buprenorphine and intermediate samples even though it had them after Orexo served its requests so that Orexo may seek alternative relief, if necessary.

## V. ACTAVIS SHOULD NOT BE PERMITTED TO RELY ON THE OCTOBER 5 ORDER TO AVOID DISCOVERY

After October 5, Actavis relied on the Order to avoid discovery that (1) would permit Orexo to confirm or contradict Actavis's representation that it does not have any samples of buprenorphine or intermediates in its possession and (2) address whether Actavis has any other raw materials in its possession (in addition to [redacted]).

Orexo requested 30(b)(6) testimony to address the availability of samples that were the subject of Orexo's discovery requests. (Ex. 4, 10/2/15 Letter Brook to Poullaous). Citing the October 5 Order, Actavis refused to provide a witness. (Ex. 5, 10/7/15 Letter Poullaos to Brook). That discovery is relevant to whether samples were available so that the Court can fairly decide what relief is appropriate if samples are not provided. Given the inconsistency between Actavis's unsupported representation and the documents presented to Magistrate Judge Fallon addressed above, discovery regarding whether Actavis has buprenorphine and other samples is appropriate (and Actavis should want to provide the discovery to support its representations).

In addition, on October 6 an Actavis employee testified at a deposition that [redacted] (Ex. 6, 10/7/15 Letter Brook to Nutter). Actavis again cited the October 5 Order and refused. (Ex. 7, 10/7/15 Letter Nutter to Brook). Like the 30(b)(6) testimony, [redacted] resolve the incongruity between Actavis's documents showing that it had buprenorphine in [redacted] and Actavis's statement

that it did not. They would also show whether Actavis has any other raw materials in its possession.

Orexo requests that the Court require Actavis to provide the requested 30(b)(6) testimony and produce inventory documents so that Orexo may test the representations Actavis made to Magistrate Judge Fallon that formed the basis for paragraphs 2 and 4 of the October 5 Order.

## CONCLUSION

For the reasons set forth above, as well as those set forth in Orexo's September 14, 2015 letter to the Court and during the October 1 hearing, Orexo respectfully requests that the Court set aside paragraphs 2, 4 and 6 of the October 5 Memorandum Order, require that Actavis produce any samples in its possession, and provide explanations and discovery to show why samples were not preserved.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

Jack B. Blumenfeld (#1014)
Derek J. Fahnestock (#4705)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
dfahnestock@mnat.com
jtigan@mnat.com
*Attorneys for Plaintiffs*
*Orexo AB and Orexo US, Inc.*

OF COUNSEL:

Errol B. Taylor
Fredrick M. Zullow
Anna Brook
Nangah Tabah
Jordan P. Markham
MILBANK, TWEED, HADLEY & MCCLOY LLP
28 Liberty Street
New York, NY 10005
(212) 530-5000

October 19, 2015
9567069

**CERTIFICATE OF SERVICE**

I hereby certify that on October 27, 2015, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on October 27, 2015, upon the following in the manner indicated:

John C. Phillips, Jr., Esquire *VIA ELECTRONIC MAIL*
Megan C. Haney, Esquire
David A. Bilson, Esquire
PHILLIPS, GOLDMAN & SPENCE, P.A.
1200 North Broom Street
Wilmington, DE 19806
*Attorneys for Defendant Actavis Elizabeth LLC*

Michael K. Nutter, Esquire *VIA ELECTRONIC MAIL*
Ivan M. Poullaos, Esquire
George C. Lombari, Esquire
Karl A. Leonard, Esquire
Tyler G. Johannes, Esquire
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
*Attorneys for Defendant Actavis Elizabeth LLC*

Melinda K. Lackey, Esquire *VIA ELECTRONIC MAIL*
WINSTON & STRAWN LLP
1111 Louisiana Street, 25th Floor
Houston, TX 77002-5242
*Attorneys for Defendant Actavis Elizabeth LLC*

/s/ Derek J. Fahnestock
Derek J. Fahnestock (#4705)